## UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA PANAMA CITY DIVISION

JEREMY A. JONES,

      Plaintiff,

v.                                                    Case No.  5:23-cv-140-TKW-MJF

BRIAN M. EUSTICE,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

Jeremy A. Jones, proceeding *pro se*, has filed a second amended civil rights complaint. Doc. 17. Defendant Brian Eustice moves to dismiss the complaint for Jones's failure to exhaust administrative remedies, failure to state a First-Amendment retaliation claim, and because Jones's demand for punitive damages is barred. Doc. 31. Jones opposes the motion. Doc. 36. The undersigned recommends that Eustice's motion to dismiss be granted in part and denied in part.

## I.  BACKGROUND

Jones, an inmate of the Florida Department of Corrections, filed this lawsuit on May 18, 2023. Doc. 1. Jones's Second Amended Complaint claims that Sergeant Eustice violated the Eighth Amendment on March

Page 1 of 19

26, 2023, when Eustice entered Jones's cell and sprayed Jones with a chemical agent while Jones was sleeping. Doc. 17 at 5–7. Jones alleges that Eustice sprayed him because Eustice believed Jones orchestrated an inmate attack on Eustice in 2021. *Id.* at 6. As relief, Jones seeks compensatory and punitive damages.

Eustice moves to dismiss this action with prejudice because: (1) Jones failed to properly exhaust available administrative remedies as required by 42 U.S.C. § 1997e(a); (2) Jones fails to state a plausible claim for retaliation under the First Amendment; and (3) Jones's request for punitive damages is barred by 18 U.S.C. § 3626(a)(1)(A). Doc. 31 at 2–23. Jones responds that he satisfied § 1997e(a)'s exhaustion requirement. Doc. 36

## II.    JONES EXHAUSTED HIS ADMINISTRATIVE REMEDIES

### A.    The PLRA's Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") provides that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a mandatory pre-

condition to suit. *See Booth v. Churner*, 532 U.S. 731, 739 (2001) ("The 'available' 'remed[y]' must be 'exhausted' before a complaint under § 1983 may be entertained.").

This exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, whether they allege excessive force or some other wrong, and whether they seek injunctive relief, monetary damages, or both. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). The purpose of the PLRA's exhaustion requirement "is to put [administrative authority] on notice of all of the issues in contention and allow the [authority] an opportunity to investigate those issues." *Chandler v. Crosby*, 379 F.3d 1278, 1287 (11th Cir. 2004) (citations omitted).

"[T]he PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "[P]roper exhaustion of administrative remedies . . . means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id.* at 90 (internal quotation marks and citation omitted). "To determine 'proper exhaustion' in prisoner civil rights actions, courts must look to the requirements of the 'prison grievance system.'" *Gipson v. Renninger*, 750 F. App'x 948, 951 (11th Cir. 2018) (quoting *Woodford*, 548

U.S. at 95). In other words, "[a] prisoner must comply with rules 'defined not by the PLRA, but by the prison grievance process itself.'" *Gipson*, 750 F. App'x at 951 (quoting *Jones v. Bock*, 549 U.S. 199, 218 (2007)).

Generally, the FDC's administrative remedy program requires an inmate to: (1) file an informal grievance with a designated prison staff member, (2) file a formal grievance at the institutional level with the Warden's office, and (3) submit an appeal to the Office of the Secretary (through the Bureau of Policy Management and Inmate Appeals in the FDC's Central Office). *See* Fla. Admin. Code rr. 33-103.005 to 33-103.007; *see also Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1218 (11th Cir. 2010).

As to the level of specificity required in a grievance, courts apply a "notice pleading standard." *Harvard v. Inch*, 411 F. Supp. 3d 1220, 1244 (N.D. Fla. 2019). This standard requires the prisoner to provide sufficient information in the grievance "to alert the prison to the nature of the wrong for which redress is sought." *Id*. at 1244 (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)).

**B.    The Framework for Evaluating an Exhaustion Defense**

A failure to exhaust administrative remedies is an affirmative defense that the defendant bears the burden of proving. *Jones*, 549 U.S.

at 216; *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). Deciding a motion to dismiss for failure to exhaust administrative remedies involves two steps. *Turner*, 541 F.3d at 1082. First, the court looks to the factual allegations in the defendant's motion, and those in the plaintiff's response. *See id.* at 1082. If they conflict, the court accepts the plaintiff's version of the facts as true. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.* at 1082.

If the complaint is not subject to dismissal at the first step—where the plaintiff's allegations are assumed to be true—"the court proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082 Upon making findings on the disputed issues of fact, the court then decides whether, under those findings, the plaintiff has exhausted his available administrative remedies. *See, e.g., Singleton v. Dep't of Corr.*, 323 F. App'x 783, 785 (11th Cir. 2009).

## C. **Application of the *Turner* Procedure**

Jones submitted several prison grievances. All but two fail to qualify for proper exhaustion because they either grieved a different issue (disciplinary reports) or were returned without action because they

failed to comply with the rules of the inmate grievance procedure.[1] The
exhaustion issue boils down to these two grievances: Jones's Informal
Grievance Log #104-2304-0008 and Jones's appeal of that grievance,
Appeal Log #23-6-11998.

    **1.**    ***The First Step of the Turner Procedure***

The parties do not dispute that on March 31, 2023, Jones submitted
an informal grievance (Informal Grievance Log #104-2304-0008)
concerning Eustice's spraying Jones with a chemical agent on March 26,
2023. Doc. 1 at 20–23 & Ex. C; Doc. 31 at 8–9 & Ex. B. The FDC received
this informal grievance on April 3, 2023. *Id*. On April 5, 2023, a staff
member (L. Cooley) denied the grievance, stating:

> Your grievance has been reviewed and processed. Based
> on the nature of this Grievance this will be forwarded to the

---

[1] These grievances include Informal Grievance Log #104-2304-0031
(grieved DR; returned without action); Informal Grievance Log #104-
2304-0241 (returned without action); Formal Grievance Log # 2304-104-
075 (grieved DR), Formal Grievance Log #2304-104-076 (grieved DR);
Formal Grievance Log #2304-104-090 (grieved DR); Formal Grievance
Log #2304-104-089 (grieved DR); Formal Grievance Log #2304-104-091
(grieved DR; returned without action); Formal Grievance Log #2304-104-
103 (grieved DR; returned without action); Appeal #23-6-14022 (grieved
DR); Appeal #23-6-11354 (returned without action); Appeal #23-6-12040
(returned without action); Appeal #23-6-13933 (grieved DR; returned
without action); and Appeal #23-6-13936 (grieved DR; returned without
action). Doc. 31, Attach.

Colonel's office for review. This Grievance is at this time denied untill [sic] an investigation is done.

Doc. 1-1, Ex. C; Doc. 31-2, Ex. B.

The parties also do not dispute that on April 8, 2023, Jones signed an appeal to the Office of the Secretary (Appeal Log #23-6-11998). Doc. 1-1, Ex. D; Doc. 31-16, Ex. P. On April 13, 2023, the Secretary's Office received Jones's appeal. Doc. 1-1, Ex. D at 2; Doc. 31-16, Ex. P at 2. The appeal was classified as a "10G" complaint involving "Sgt. Eustice." *Id.* at 2. The Secretary's representative (W. Millette) responded as follows:

Your appeal has been reviewed and evaluated.

The subject of your grievance is currently under review by the Departmental Staff. At the conclusion of that review appropriate and necessary action will be taken.

You bypassed the formal grievance level by marking the Secretary's Box at the top of the DC1-303 form.

All transfer requests should be initiated via an inmate request to your Classification Officer, once you meet the requirements.

As this process was initiated by the Department prior to the receipt of your grievance, your request for action by this office is denied.

Doc. 1-1, Ex. D at 1; Doc. 31-16, Ex. P at 1. The appeal response was signed on April 21, 2023, and mailed on May 3, 2023. *Id.*

Eustice agrees that Informal Grievance Log #104-2304-0008 put the FDC on notice of Jones's claim of being gratuitously sprayed. Doc. 31 at 8. Eustice maintains that because Informal Grievance Log #104-2304-0008 was denied, the FDC's grievance procedure required Jones to seek further review.

Eustice argues that Appeal Log #23-6-11998 does not satisfy the exhaustion requirement for three reasons. First, Jones's appeal "did not specifically grieve[ ] the use of force incident that took place on March 26, 2023," and instead "grieved that the institution denied Plaintiff's informal grievance without investigating the concerns that Plaintiff brought to the institution's attention." Doc. 31 at 11, 12. Second, Eustice contends that the appeal was not denied on the merits but rather "was denied for failure to comply with grievance procedures" because Jones "bypassed the formal grievance level." *Id*. at 12. Third, Eustice argues that although the appeal was denied as opposed to returned without action, "there was no decision on the merits because there was no determination regarding the accuracy of Plaintiff's claims." *Id*. at 13.

Jones disputes Eustice's interpretation of Jones's appeal and the Secretary's response. Doc. 36. In Jones's view, his appeal asked the Secretary's Office to review Eustice's conduct, and explained the reason

why—because the institution was thwarting the investigative process and Jones's ability to seek further administrative review. Jones reads the Secretary's response as denying his appeal on the merits notwithstanding Jones's bypassing the formal-grievance step. *Id.* at 3–9.

Accepting Jones's view of the facts as true, Appeal Log #23-6-11998 exhausted Jones's administrative remedies. Thus, this suit is not subject to dismissal at the first *Turner* step, and the undersigned must proceed to the second *Turner* step.

### 2.    *The Second Step of the Turner Procedure*

At the second step, the District Court must identify the particular factual disputes related to exhaustion, make specific findings to resolve the factual disputes, and decide whether, based on those findings, Eustice has shown that Appeal Log #23-6-11998 did *not* exhaust Jones's administrative remedies. *Turner*, 541 F.3d at 1082–83.

The initial factual disputes concern whether Jones's appeal raised the issue of Eustice's assault on March 26, 2023, and whether the Secretary's Office construed the appeal as grieving Eustice's conduct. The undersigned resolves both factual disputes in Jones's favor.

In Appeal Log #23-6-11998, Jones stated that he was seeking the Secretary's review of "the matter" and "the allegations" raised in

Informal Grievance Log #104-2304-0008 "due to the nature" of those allegations and because the institution was obfuscating the investigative and administrative review processes. Doc. 1-1, Ex. D at 2; Doc. 31-16, Ex. P at 2. Jones attached to his appeal a copy of Informal Grievance Log #104-2304-0008. Doc. 31-16, Ex. P at 3–6. The "matter" and the "allegations" raised in Informal Grievance Log #104-2304-0008 described Eustice's spraying Jones with a chemical agent on March 26, 2023, while Jones was sleeping. *Id.*

The Secretary's Office classified Appeal Log #23-6-11998 as a "10G" grievance involving "Sgt. Eustice." Doc. 1-1, Ex. D at 2; Doc. 31-16, Ex. P at 2. The FDC defines grievance classification code "10" as involving the subject or "topic area" of "Complaints Against Staff – Discrimination, harassment, negligence, improper conduct or language." Fla. Admin. Code r. 33-103.013(10). Complaints involving the "Grievance Process," on the other hand, are coded as a "9." *See id.*, r. 33-103.013(9). Given these facts, the undersigned finds that Jones's appeal grieved Eustice's spraying Jones with a chemical agent while Jones was asleep. The undersigned also finds that the Secretary's Office recognized and classified Appeal Log #23-6-11998 as grieving Eustice's spraying of Jones.

The next factual dispute is whether the Secretary's response denied the appeal on procedural grounds for failure to comply with the prison grievance procedure, or whether the Secretary denied the appeal on the merits even though Jones bypassed the formal-grievance step. *See Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1215–16 (11th Cir. 2015) ("*Whatley I*") (characterizing these determinations as factual findings); *Whatley v. Smith*, 898 F.3d 1072, 1085 (11th Cir. 2018) ("*Whatley II*") (same).

The Secretary's response to Appeal Log #23-6-11998 informed Jones that "[t]he subject of your grievance is currently under review by the Departmental Staff. At the conclusion of that review, appropriate and necessary action will be taken" Doc. 1-1, Ex. D at 1; Doc. 31-16, Ex. P at 1. This statement reflects that the Secretary's Office (1) accepted Jones's appeal for review, (2) reviewed Jones's underlying allegations against Eustice and (3) confirmed that Departmental Staff were reviewing Eustice's conduct. In other words, the Secretary reviewed the substance of Jones's appeal.

It is true that the Secretary's response also noted that Jones "bypassed the formal grievance level by marking the Secretary's Box at the top of the DC1-303 form." *Id*. But unlike Jones's other appeals that

failed to comply with the grievance procedure's rules, Appeal Log #23-6-11998 was *not* returned without action.[2] *See* Fla. Admin. Code r. 33-103-007(6)(f) ("The response shall state whether the appeal . . . is approved, denied, or being returned and shall also state the reasons for the approval, denial, or return."). Rather, the final sentence of the Secretary's response states that Jones's appeal was "denied" because "the process [for internally reviewing Eustice's conduct] was initiated by the Department prior to the receipt of your grievance." Doc. 1-1, Ex. D at 1; Doc. 31-16, Ex. P at 1. This indicates a merits decision, not a procedural-based decision.

The Secretary's disposition of the appeal ("denied" rather than "returned") and the reason for the denial (the already-pending Departmental review of Eustice's conduct) reflect that the Secretary's disposition of the appeal did not rely on the procedural defect (Jones's by-passing the formal grievance step). Instead, the Secretary accepted Appeal Log #23-6-11998 for review, addressed Jones's complaint about

---

[2] *See* Doc. 31-13, Ex. M (Appeal Log #23-6-11354) (noting procedural deficiencies and stating: "Based on the foregoing information, your grievance is returned without action."); Doc. 31-14, Ex. N (Appeal Log #23-6-13933) (noting procedural deficiency, commenting on the merits, and stating: "Your request for administrative appeal is being returned without action."); Doc. 31-15, Ex. O (Appeal Log #23-6-13936) (same).

Eustice's conduct on the merits, and denied the appeal because the Department already was reviewing Eustice's conduct. The Secretary's response, read as a whole and in context, decided Jones's appeal on the merits.

The undersigned is not persuaded by Eustice's argument that the denial of Jones's appeal was not a "decision on the merits because there was no determination regarding the accuracy of Plaintiff's claims." Doc. 31 at 13. A decision can be on the merits (as opposed to a procedural defect) even if it defers to another authority's determination of credibility and other factual issues.

Based on the foregoing factual findings, the undersigned concludes that the Secretary's Office waived the procedural defect and addressed Appeal Log #23-6-11998 on the merits. This conclusion is consistent with the Eleventh Circuit's decisions in *Whatley I* and *Whatley II*.

In *Whatley I*, the Eleventh Circuit emphasized that the question is not whether the Secretary *could have* rejected the appeal by enforcing the procedural rule. The question is whether the Secretary *actually did* reject the appeal on that procedural ground. *Whatley I*, 802 F.3d at 1214. The court held that: "a prisoner has exhausted his administrative remedies when prison officials decide a procedurally flawed grievance on

the merits. . . . [D]istrict courts may not enforce a prison's procedural rule to find a lack of exhaustion after the prison itself declined to enforce the rule." *Id.* at 1215.

In *Whatley II*, the court held that "a prison does not waive a procedural defect unless and until it decides the procedurally flawed grievance on the merits at the last available stage of administrative review. *Whatley II*, 898 F.3d at 1083. A prison *does*, however, "waive[ ] its procedural objections to considering the merits of a grievance, and therefore waives its exhaustion defense, if it *does not explicitly rely on* the grievance's procedural shortcomings *as an adequate and independent ground for denying the grievance at the administrative level.*" *Id.* at 1084 (emphasis added).

In this case, the Secretary *noted* the lack of a formal grievance, but ultimately overlooked that procedural flaw, declined to enforce that rule, addressed the merits of Jones's claim about Eustice spraying him, and ultimately denied the appeal because the incident already was under review. "[T]he benefits of the exhaustion requirement are fully realized when an inmate pursues the prison grievance process to its final stage and receives an adverse decision on the merits, *even if the decision-maker could have declined to reach the merits because of one or more procedural*

Page 14 of 19

*deficiencies*." *Whatley I*, 802 F.3d at 1215 (internal quotation marks and citation omitted).

Because Appeal Log #23-6-11998 exhausted Jones's available administrative remedies, Eustice is not entitled to dismissal of this action.

### III.   JONES FAILS TO STATE A FIRST-AMENDMENT RETALIATION CLAIM

Jones's Second Amended Complaint asserts that Eustice's conduct violated the Eighth Amendment. Doc. 17 at 7. As part of that claim, Jones alleges that Eustice's conduct was "retaliatory" because it was motivated by Eustice's belief that Jones previously orchestrated an inmate attack on Eustice at a different prison. Eustice liberally construes this allegation as asserting a First-Amendment retaliation claim, and requests dismissal for failure to state a claim. Doc. 31 at 14–15.

Jones's response to the motion to dismiss does not clarify whether Jones's allegation of retaliation was intended to support a First-Amendment retaliation claim. Doc. 36. To clarify the issues going forward, the undersigned will address whether Jones's allegations state a plausible claim for relief under the First Amendment.

To state a First-Amendment retaliation claim, an inmate must allege that (1) he engaged in speech or conduct protected under the First

Amendment, (2) he "suffered an adverse action from prison officials that would deter a person of ordinary firmness from engaging in such speech or act," and (3) "the protected speech or conduct and adverse action were causally connected." *Smith v. Governor for Ala.*, 562 F. App'x 806, 815 (11th Cir. 2014) (citing *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008)). To allege a causal connection, the prisoner must allege that, "as a subjective matter, a motivation for the defendant's adverse action was the prisoner's [protected speech or conduct.]" *Smith*, 562 F. App'x at 815 (citing *Smith*, 532 F.3d at 1278).

Jones alleges that Eustice sprayed him because Eustice believed Jones previously orchestrated an inmate attack on Eustice. Doc. 17 at 5-7. This allegation fails to state a plausible First-Amendment retaliation claim for two reasons.

First, orchestrating an inmate attack on a prison official is not speech protected by the First Amendment. *Smith*, 532 F.3d at 1277 ("[A]n inmate's First Amendment right to free speech is not protected if affording protection would be inconsistent with the inmate's status as a prisoner or with the legitimate penological objectives of the corrections system."). Second, even assuming that orchestrating an attack on a prison official *could be* considered protected conduct, Jones's claim fails

Page 16 of 19

because Jones *denies* engaging in that conduct. In short, even taking Jones's allegations as true, he did not engage in activity protected by the First Amendment. *See Butler v. Norman*, 766 F. App'x 924, 926 (11th Cir. 2019).

Because Jones's allegations do not give rise to a plausible First-Amendment retaliation claim, Eustice is entitled to dismissal of any First-Amendment claim asserted in Jones's Second Amended Complaint.

## IV.    A RULING ON PUNITIVE DAMAGES IS PREMATURE

Eustice moves to dismiss Jones's request for punitive damages because punitive damages are barred by 18 U.S.C. § 3626(a)(1)(A). *See* Doc. 31 at 16-23. Jones's response does not address this issue. Doc. 36.

The District Court need not decide at this juncture whether punitive damages might be available to Jones. The District Court and other federal judges previously have explained why it is unnecessary and premature to resolve this issue at the motion-to-dismiss or summary-judgment stage. *See, e.g., Brazill v. Jones*, No. 5:21-cv-99-TKW/MJF, 2024 WL 1723555, at *10 (N.D. Fla. Apr. 1, 2024), *report and recommendation adopted*, 2024 WL 1717392 (N.D. Fla. Apr. 22, 2024); *Hallam v. Gilbert*, No. 3:23-cv-7681-LAC/ZCB, 2024 WL 872288, at *3–4 (N.D. Fla. Feb. 13, 2024), *report and recommendation adopted*, 2024 WL

867067 (N.D. Fla. Feb. 29, 2024); *Baker v. Rathel*, No. 1:23-cv-3-AW/MJF, 2023 WL 7496224, at *4–5 (N.D. Fla. Oct. 5, 2023), *report and recommendation adopted*, 2023 WL 7497491 (N.D. Fla. Nov. 13, 2023); *Vaughn v. Cambria Cnty. Prison*, 709 F. App'x 152, 155 n.2 (3d Cir. 2017). For the reasons articulated in those decisions, Eustice's motion to dismiss Jones's request for punitive damages should be denied.

## V. CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1.   Defendant Eustice's motion to dismiss, Doc. 31, be:

(a)   **GRANTED** to the extent Plaintiff's Second Amended Complaint claims that Eustice's conduct violated the First Amendment; and

(b)   **DENIED** in all other respects.

2.   This case be returned to the undersigned for further proceedings on Plaintiff's individual-capacity Eighth-Amendment claim against Defendant Eustice.

At Panama City, Florida, this <u>8th</u> day of August, 2024.

/s/ *Michael J. Frank*

**Michael J. Frank**
**United States Magistrate Judge**

## NOTICE TO THE PARTIES

**The District Court referred this case to the undersigned to make recommendations regarding dispositive matters.** *See* **28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b). Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the report and recommendation.** Any different deadline that may appear on the electronic docket is for the court's internal use only. **A party must serve a copy of any objections on all other parties. A party who fails to object to this report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.** *See* **11th Cir. R. 3-1; 28 U.S.C. § 636.**